IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

**Joseph Stoyas,**

                Plaintiff,

                                        Jury Trial Requested

**Board of Trustees of
Northern Illinois University,**

                Defendant.

## Complaint

The plaintiff, Joseph Stoyas ("Plaintiff" or "Stoyas"), by and through his attorneys, brings claims against the defendant, the Board of Trustees of Northern Illinois University ("Defendant" or "NIU") for disability discrimination in violation of the Rehabilitation Act and Title II of the Americans with Disabilities Act, and support of such claims states as follows:

## Jurisdiction and Venue

1. This Court's jurisdiction is invoked pursuant to 28 U.S.C. §§451, 1331, and 1343.

2. Venue is proper under 28. U.S.C. § 1391(b) because Defendant is located in Illinois and the unlawful practices alleged herein took place in the Northern District of Illinois.

3. Plaintiff resides in the Eastern Division of this district, as do some of the potential witnesses in this case.

## The Parties

4. At all times relevant hereto, Plaintiff was a student at NIU and a qualified individual with a disability within the meaning of 42 USC § 12131 and 29 U.S.C. § 705(20).

5. The Board of Trustees of Northern Illinois University is and was at all relevant times an Illinois body politic that operates, manages, controls and maintains Northern Illinois University pursuant to 110 ILCS 685, and is a recipient of federal financial assistance within the meaning of 29 U.S.C. § 794.

## Facts Common to All Claims

6. Stoyas was a graduate student in NIU's Speech-Language Pathology program during the fall semester of 2019.

7. Stoyas was diagnosed as having a chronic stutter by a speech-language pathologist. His stutter influences his ability to speak as well as his mental health. The stutter manifests as involuntary pauses or blocks. Sometimes it takes Stoyas a minute or two to say his name or to say hello.

8. NIU accepted Stoyas into the program after determining he met all the qualifications for the graduate program.

9. Stoyas's stutter did not make him incapable of successfully completing the Speech-Language Pathology graduate program. Speech therapists who have a stutter have been able to help children with speech therapy sessions for decades.

10. Stoyas's first course in the graduate program was COMD 687: Speech-Language Practicum: Speech and Hearing Clinic ("COMD 687"). In COMD 687, graduate students take the role of student clinicians to treat clients with communication disorders under the supervision and guidance of a speech-language pathologist. Supervisors assign clients to students so that they can conduct speech therapy with their clients.

11. Deborah McGee ("McGee"), a clinical faculty member in the Speech-Language Pathology program, was assigned as Stoyas's supervisor for the course.

12. Janet Olson, Associate Professor and Area Coordinator in the School of Allied Health and Communicative Disorders ("Olson") also participated in evaluated Stoyas for the course.

13. McGee and Olson determined that because of Stoyas's stutter, he would only be assigned one client, while Stoyas's colleagues without a stutter were assigned two or more clients for the same course.

14. McGee and Olson also assigned Stoyas a co-clinician to work with Stoyas's client.

15. The result of these forced accommodations was that students without a stutter were given significantly greater opportunities than Stoyas to learn and practice clinical skills.

16. At Stoyas's midterm evaluation with McGee on October 16, 2019, Stoyas asked permission to treat the client alone, without the participation of a co-clinician. McGee denied this request, explaining that she was "nervous about how

removing the co-clinician 'support' would affect [his] fluency." By "fluency," McGee was referring to Stoyas's stutter.

17. McGee and Olson also unilaterally imposed on Mr. Stoyas the "support" of asking him to attend weekly speech therapy sessions to overcome his disability. They neither asked his input as to whether he wanted speech therapy nor asked him questions in order to ascertain what a reasonable accommodation might be. Stoyas was not given the option of rejecting the "supports," nor did Olson or McGee refer him to NIU's Disability Resource Center.

18. NIU's unilateral accommodation stemmed from misinformation, bias and stereotype about individuals with a stutter. Successful treatment of stuttering is holistic and accepts or even embraces disfluency.

19. NIU was also aware that speech therapy did not assist Stoyas with his stutter, since just months earlier, Stoyas had previously attended and withdrawn from speech therapy as an undergraduate with Clinical Assistant Professor Michelle O'Loughlin ("O'Loughlin") of the School of Allied Health and Communicative Disorders. O'Loughlin is the same instructor who provided Stoyas speech therapy in the fall semester of 2019.

20. Despite the fact that speech therapy did not improve Stoyas's stutter, NIU nonetheless persisted in asking Stoyas to attend speech therapy.

21. O'Loughlin advised Stoyas on November 12, 2019 to reach out to Michael Boyle, PhD, a professor of Communication Science and Disorders at Montclair State University, for advice about how to increase his fluency. Dr. Boyle suggested to

4

Stoyas that he speak with Katie Gore, M.A. ("Gore") and two speech-language pathologists from Chicago who specialize in stuttering.

22. All three specialists told Stoyas that the supports imposed on him were inappropriate both from a student instruction and patient fluency management standpoint.

23. During the following meeting on November 19, 2019 Stoyas relayed this feedback to O'Loughlin. O'Loughlin responded that he should simply focus more on what fluency strategies he would use during a speech therapy session with his client on November 26, 2019.

24. On November 21, 2021 Stoyas met with O'Loughlin, Olson, and Emily Palmer. He told them that the imposition of a co-clinician, the pressure to achieve near-perfect fluency, and the sessions with O'Loughlin were inhibiting his learning as a clinician.

25. Also on November 21, 2019 Stoyas tried through email to schedule a meeting to determine how NIU could more appropriately support him in the course and program, inviting Olson, Gore, Sarah Klaper (University Ombudsperson), Debra Miller (Director, Disability Resource Center), and Sherrill Morris (Chair of Allied Health and Communicative Disorders). Olson responded, "I think we need to give you some more time in clinic before we do," and said she was available to meet in January.

26. NIU persisted in its unilateral approach to Mr. Stoyas's stutter.

5

27. The speech therapy sessions did nothing to help Mr. Stoyas learn how to improve his clinical skills notwithstanding his stutter. Instead, the sessions merely focused on improving his stutter, an impossible task given the neurological underpinnings of the disability.

28. The supports NIU imposed ultimately interfered with Stoyas's ability to perform in the class. Because of the overemphasis on Stoyas's stutter, Stoyas experienced overwhelming stress that interfered with his performance in both COMD 687 and COMD 671: Speech Sound Disorders, the other course he took in the fall semester of 2019.

29. As a result of being assigned fewer clients than other students and being denied opportunities to conduct therapy sessions directly with his only client, Mr. Stoyas was graded on only five sessions alone with the client (as opposed to 23 for a single client if he had been permitted to conduct the sessions without the co-clinician or with more equitable distribution of duties between him and the co-clinician).

30. While supervising Mr. Stoyas as he provided clinical therapy to that one client, Professors McGee and Olson overemphasized improving his disability as opposed to coaching him on how to improve his skills as a clinician. In responding to his charge of discrimination, they pointed to perceived shortcomings as unsurmountable, as if beginning students are immediately supposed to have mastered their clinical skills. In short, NIU set up Mr. Stoyas for failure from the beginning and did not give him a chance to learn and improve.

31. McGee gave Stoyas a letter grade of C for the COMD 687 course, a failing grade for a graduate student. He also received a C in COMD 671, a course in which Stoyas's performance was compromised as a result of the all-consuming pressure NIU placed on him in COMD 687 to overcome his disability. Consequently, he was dismissed from the Speech-Language Pathology program.

32. Stoyas appealed the grade and eventually was given a B in COMD 687. Because he was traumatized after being repeatedly humiliated and faulted for his disability, he did not petition for readmittance to the program.

33. As a result of being stigmatized and denied learning opportunities as described in this complaint, Stoyas experienced serious emotional distress, including depression and suicidal ideation.

34. Stoyas is now an accomplished participant in a graduate program for social work with a 4.0 grade point average and has successfully completed two eleven-week internships which require his verbal engagement with members of the community, demonstrating that his stutter is not an insurmountable obstacle when Stoyas is provided appropriate support and permitted similar opportunities as other students.

## Count I
## Discrimination in violation of
## the Rehabilitation Act, 29 U.S. Code § 794

35. All of the allegations in the foregoing paragraphs are incorporated by reference as if fully set out herein.

36. At all relevant times Stoyas was a qualified individual with a disability.

37. Throughout the fall semester of 2019, Stoyas met the academic and technical standards requisite to admission and participation in NIU's Speech-Language Pathology program.

38. In offering Stoyas feedback in his course performance in COMD 687, NIU failed to provide feedback aimed at improving his clinical skills as opposed to eliminating his disability.

39. In evaluating Stoyas's achievement in COMD 687, NIU failed to provide evaluation methods that represented his achievement in the course rather than reflecting his impaired speaking skills, in violation of 34 C.F.R. Part 104.44.

40. Stoyas was excluded from full participation in the Speech-Language Pathology program because of his disability.

41. As a result of the discrimination described herein, Stoyas was denied educational benefits and wages that he could have earned had he completed the program.

Count II
Discrimination in violation of the
Americans With Disabilities Act, 42 USC 12132

42. All of the allegations in the foregoing paragraphs are incorporated by reference as if fully set out herein.

43. Plaintiff has an impairment which substantially limits him in the major life activity of communicating.

44. In the alternative, NIU regarded Plaintiff as disabled.

45. Plaintiff was excluded from full participation in NIU's Speech-Language Pathology program because of his disability.

46. Plaintiff's progress in his academic program was obstructed by the accommodations NIU unilaterally imposed on him.

47. As a result of the discrimination described herein, Stoyas was denied educational benefits and wages that he could have earned had he completed the program.

## Count III
### Failure to Accommodate in violation of
### the Rehabilitation Act, 29 U.S. Code § 794, and the
### Americans With Disabilities Act, 42 USC 12132

48. All of the allegations in the foregoing paragraphs are incorporated by reference as if fully set out herein.

49. Plaintiff has an impairment which substantially limits him in the major life activity of communicating.

50. It was apparent to NIU that Stoyas sometimes needed an accommodation in his therapy sessions with clients.

51. For example, it sometimes took Stoyas longer than other students to talk. Allowing Stoyas time and space to interact with clients while he was stuttering during therapy sessions, or providing him real-time assistance through a voice recording or instructor intervention during time-sensitive examinations, would have helped him improve and practice his clinical skills.

52. Stoyas attempted to initiate an interactive process with NIU to develop accommodations that facilitated rather than impeded his progress, but NIU insisted on its unilateral approach to the accommodations it imposed on Stoyas.

53. When Stoyas provided NIU feedback, including from outside experts, about how the supports it imposed were inappropriate, NIU refused to adjust its "supports" and failed to explore other possible accommodations. Instead, it simply pressured Stoyas to overcome his disability.

WHEREFORE Plaintiff respectfully requests:

- All wages he would have received following his graduation from the Speech-Language Pathology program but for the discrimination;
- Injunctive relief prohibiting NIU from imposing disability accommodations on students without first engaging in an interactive, collaborative process involving NIU's Disability Resource Center and the student;
- Professional training for the Speech and Hearing department regarding how to best support students who have a stutter;
- Damages for emotional injuries;
- Attorneys' fees and costs; and
- Such other relief as law and justice allow.

## JURY DEMAND

Plaintiff requests trial by jury.

Dated: November 18, 2021

Respectfully submitted,

s/ Rima Kapitan
Atty No. 6286541
Kapitan Gomaa Law, P.C.
P.O. Box 6779
Chicago, Illinois 60680
Phone: (312) 566-9590
Fax: (312) 566-9591
rima@kapitangomaa.com